LAWRENCE A. JACOBSON SB# 057393
SEAN M. JACOBSON SB# 227241
COHEN AND JACOBSON
900 Veterans Boulevard, Suite 600
Redwood City, California 94063
Telephone: (650) 261-6280
Facsimile: (650) 368-6221

Attorneys for Debtor
Valley Corp. B

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re: | Case No. 07-54072 ASW |
| VALLEY CORP B. fdba RJH CORP, | Chapter 11 |
| Debtor. | Date: January 16, 2008<br>Time: 3:30 p.m.<br>Place: Hon. Arthur S. Weissbrodt |

**DEBTOR'S POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR RELIEF FROM STAY FILED BY TY AND KAREN LEVINE**

**I.  INTRODUCTION**

Debtor Valley Corp. B. ("Debtor") filed its Chapter 11 bankruptcy case on December 7, 2007, and on December 19, 2007, Debtor initiated an adversary proceeding for injunctive and declaratory relief. On January 11, 2008, Debtor presented its Application for Temporary Restraining Order seeking an order staying state court litigation against Debtors sole officer and employee pending confirmation of a Chapter 11 Plan.

On December 28, 2007, i.e., three weeks after the filing of the Chapter 11 case, Ty Levine and Karen Levine (collectively the "Levines") filed their Motion for Relief From Stay. The Motion

for Relief Stay and Application for TRO are set to be heard concurrently. The Levines are also the defendants in the injunctive relief proceeding.

## II. FACTUAL BACKGROUND

The factual background related to this Motion is detailed in Debtor's Application for Temporary Restraining Order. Debtor repeats below, in full, the same factual background in order to assure that this brief stands alone as its own independent pleading.

Due to the time constraints associated with preparation of this Opposition, Debtor will not address the list of twenty-six (26) items alleged in the Levines' brief to be at issue in the state court action. Debtor does reiterate that the underlying merits of the dispute with the Levines are vigorously contested. Regardless of the factual disputes, for the legal reasons set forth herein the Motion for Relief From Stay must be denied.

Debtor also notes that the Levines devote approximately four (4) pages of their brief to irrelevant personal attacks directed at both Debtor and Haas, individually. Again, Debtor disputes the allegations and accusations of delay contained in the Levine's Motion, and which Debtor anticipates will likely be the focal point of the Levine's opposition to the Application for TRO. However, Debtor prefers to focus on the legal arguments and does not consider that a response in kind will be productive to the resolution of this or the accompanying motion. Indeed, the fact that the Levines devote such a significant portion of the brief to irrelevant antagonism demonstrates the need for the breathing spell provided by the automatic stay.

### A. The Parties

Debtor is a corporation duly organized and existing under the laws of the State of California, and is the debtor and debtor in possession in the above-captioned Chapter 11 bankruptcy case. Debtor is a general contractor engaged in the business of performing primarily residential construction work, including the construction of custom homes, as well as improvements and remodeling of existing homes.

Debtor's business requires (1) bidding for awards of construction contracts; (2) hiring of

various subcontractors from various trades to perform the requisite work on each job; (3) hiring of carpenters and various tradesmen to perform construction services for the Debtor; (4) the preparation of material take-off projections and material acquisitions for job performance; and (5) managing ongoing projects; and (6) the performance of all associated accounting, bookkeeping, and administrative requirements. Debtor intends to continue its operations as a general contractor during the pendency of its Chapter 11 reorganization case.

Debtor is informed and believes that the Levines are individuals residing in Santa Clara County, California. The Levines are individuals that previously engaged Debtor to perform construction services for the building of a custom residence at 700 Benvenue Avenue, Los Altos, California (the "Residence").

Ronald J. Haas ("Haas") is an individual who at all pertinent times has been the Debtor's sole officer, shareholder, and employee.

**B. The Dispute Between the Parties**

The current dispute between the parties, which is the subject of the State Court Action, relates to the construction of the Residence. On or about October 27, 2005, Debtor and The Levines entered into a Building Construction Contract (the "Contract") pursuant to which Debtor agreed to construct the Residence for a contract price of $821,078.

A dispute has arisen between the parties with respect to performance of the Contract. On or about March 1, 2007, The Levines commenced a civil action against Debtor and Haas, individually, in Santa Clara County Superior Court, with the case identified as Case No. 1-07-CV-081016 (the "State Court Action."). The State Court Action alleges breach of contract and negligence as to Debtor, and fraud as to Haas, individually.

Debtor and Haas have filed their Answers, and contest all allegations asserted by The Levines in the State Court Action. Debtor contends that all work was performed in a satisfactory and workmanlike manner, and that Debtor has therefore fulfilled its obligations under the contract, save those obligations excused. Based upon the foregoing, The Levines' claim against

the estate, if any, is disputed, unliquidated, and contingent.

### C. The Status of the State Court Litigation

The State Court Action remains pending, however no trial date has been set. The parties have commenced initial discovery, comprising solely of written discovery. No depositions have yet taken place. The Levines have estimated that the deposition of Haas, individually and as the representative of Debtor, will require three days of testimony. Debtor's state court counsel estimates that the trial of the State Court Action, in the event that a trial date is eventually set, will require a jury trial lasting a minimum of five (5) days.

### D. Impact of State Court Litigation on Chapter 11 Proceedings

The pendency of the State Court Action has required significant time and effort, including compliance with discovery obligations, the day-to-day decision making with respect to the State Court Action, and the overriding distraction related to the pendency of the suit.

Pending at this time is also a second state court litigation against Debtor and Haas, with the second suit filed by George Yellich and Patricia Yellich, identified as Santa Clara County Superior Court Case No. 1-07-CV-078805. This second suit involves a dispute regarding a construction project, with the Yellichs alleging construction defects and seeking an accounting. No trial date has been set in this second action, and counsel for the Yellichs withdrew as counsel on December 14, 2007. Debtor and Haas contend that this is a no-liability case, however, Debtor has been forced to defend the second action, along with the time associated therewith.

Aside from the two currently pending litigations, four other litigations have been filed in various venues with respect to other construction projects. Debtor is not yet a party to those proceedings, however, at various times parties to those proceedings have stated that Debtor may be named as a party in the future.

The time and effort required to defend the two pending litigations has caused difficulties for Debtor, especially due to the fact that Haas, Debtor's sole employee, is responsible for acting on the corporation's behalf in defending the lawsuits, continuing ongoing operations, and seeking future

**POINTS AND AUTHORITIES** 4

Case: 07-54072    Doc# 35    Filed: 01/14/08    Entered: 01/14/08 16:47:37    Page 4 of 13

business. The totality of these tasks under the current circumstances has placed Debtor under significant stress.

Debtor anticipates that it will book a significant amount of new business in the upcoming three to six months in the range of approximately $2,500,000, from which Debtor will generate substantial profit. Debtor also expects to commence a new project in January, 2008, another project in February, 2008, and will also be involved in bidding on additional jobs. Debtor has expended significant time in effort in the bidding and booking process with respect to these projects since July, 2007, and further efforts will be necessary in the upcoming months.

Debtor's primary asset at the present time is an account receivable in the approximate sum of $600,000. The account debtor is Luis Yanez, and the account receivable relates to a project performed at 28025 Natoma, Los Altos Hills, California. The payor has defaulted, and litigation may be required in order to compel payment. The account receivable is subject to applicable mechanic's lien law, and the timing requirements associated therewith. Collection of the account receivable will allow for a successful reorganization by generating a significant fund from which to pay Debtor's creditors. Debtor is seeking the employment of Lester Sachs, Esq., an experienced litigator in Santa Clara County, in order to assist with the collection of the account receivable. Debtor believes that it will have the application for appointment of special counsel on file prior to the hearing date.

Provided that Debtor is afforded the protections attendant with Chapter 11 cases, Debtor is more than likely to prosecute a successful Chapter 11 reorganization case. The funds generated from the account receivable will provide a fund from which to pay allowed claims, including any amount found to be owing on account of the disputed claims following settlement or other proceedings to determine the amount of such claims, if any. Thus, it is very likely that Debtor will successfully reorganize in its Chapter 11 case.

The entirety of the circumstances required the filing of the Chapter 11 proceeding in order to provide Debtor a breathing spell to resolve its financial troubles. In particular, the stay will allow

Debtor to focus on collection of the significant account receivable, utilize the proceeds from collection in order to resolve its current disputes, continue its ongoing operations, book new business, and generate future business.

While Debtor has an opportunity to successfully reorganize by continuing ongoing operations while being afforded the opportunity to resolve its current troubles, the continued prosecution of the State Court Action as to Debtor and Haas individually will hamper Debtor's efforts to reorganize. In the event that the state court litigation proceeds against Haas individually, Haas will be required to devote significant time to establishing his defense and Debtor's defense to the State Court Action, including participation in discovery, trial preparation, reviewing witness and expert testimony, and attending trial. This problem is compounded by the fact that Haas is the sole employee of Debtor, and therefore there will be no other individual that can assist Debtor while Haas is devoting significant time to defending the State Court Action.

In the event that Haas and Debtor are forced to continue defending the State Court Action, Debtor's business will be adversely affected. Time which would otherwise be spent by Haas in operating the business, commencing currently scheduled projects, collecting the significant account receivable, bidding on projects, and generating future business, will be otherwise devoted to defending the State Court Action.

The involvement of Haas is critical to the successful reorganization of Debtor. Failure to enjoin the prosecution of State Court Action against Haas, or granting relief from stay as to Debtor, will have an adverse affect on Debtor by creating detrimental influence and pressure on Debtor through its sole officer and employee. This will cause financial, emotional, and time-related pressures on Haas, and drain the efforts of Debtor's officer and employee.

**III. SETTLEMENT POSSIBILITIES**

Upon substituting into this Chapter 11 case, counsel for Debtor has made it a priority to engage the Levines in settlement discussions which may assist in formulating a successful plan of reorganization, including resolution of the disputed claim. Debtor is cautiously optimistic that the

positive efforts towards settlement are plausible, and that the Chapter 11 proceeding may be the necessary vehicle for the parties to set aside their personal animosity and work towards constructive resolution.

To date, counsel for Debtor and counsel for the Levines[1] have engaged in written and telephonic communication in order to obtain mutual cooperation in working towards a form of alternative dispute resolution. Counsel for the Levines have been receptive and cautiously cooperative, and further discussions are scheduled between all counsel, including counsel for the insurance carrier.

The potential for global settlement discussions is relevant to this motion because there exists the distinct potential that the parties may resolve their disputes without the necessity of continued litigation in any forum. More importantly, the ongoing settlement discussions will necessarily involve resolution of both bankruptcy and state court issues, and therefore the Motion for Relief From Stay is premature. Debtor respectfully submits that the parties' immediate efforts should be directed towards settlement rather than continued litigation.

## IV. THE PURPOSES OF THE AUTOMATIC STAY WOULD BE DEFEATED IF RELIEF FROM STAY IS GRANTED AT THIS TIME

The purpose of the automatic stay is to "shield the debtor from financial pressure during pendency of the bankruptcy proceeding." (*In re Stringer*, (9th Cir. 1988) 847 F.2d 549, 552). Further, the stay "gives the bankruptcy court an opportunity to harmonize the interests of both debtor and creditors while preserving debtor's assets for repayment and reorganization of his or her obligations." (*In re MacDonald* (9th Cir. 1985) 755 F.2d 715, 717).

The automatic stay "sweeps broadly, enjoining the commencement or continuation of any judicial, administrative, or other proceedings against the debtor, enforcement of prior judgments,

---

[1] The Levines are represented by the same law firm, Hopkins and Carley, in the State Court Action (Jay Ross) and Chapter 11 case (Steven Kottmeier). In order to assure that settlement discussions are global, both Messrs. Ross and Kottmeier have been involved in the ongoing discussions.

perfection of liens, and 'any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case.'" (*In re Pettit* (9th Cir. 2000) 217 F.3d 1072, 1077).

Further, "the automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy." (*In re Conejo Enterprises* (9th Cir. 1995) 96 F.3d 346, 351 (quoting legislative history)).

This Chapter 11 proceeding is just slightly over on month old, with the Levines having filed their Motion for Relief From Stay less than one month into the reorganization proceeding. Debtor is in the initial stages of determining a method for reorganizing its financial affairs, thusordering the parties to return to state court and resume the antagonistic state court proceedings eliminate the breathing spell provided to Chapter 11 Debtors. It particularly noteworthy that Debtor has not filed this Chapter 11 proceeding to "park" in bankruptcy, but rather is already moving towards formulation of a viable plan of reorganization, and seeking cooperation from the Levines.

"Congress clearly intended the automatic stay to be quite broad. Exemptions to the stay, on the other hand, should be read narrowly to secure the broad grant of relief to the debtor." (*In re Stringer* (9th Cir. 1988) 847 F2d 549, 552). In order to provide Debtor with the protection intended by the Bankruptcy Code, the Motion for Relief From Stay must be denied.

**V.  NO CAUSE EXISTS FOR LIFTING THE AUTOMATIC STAY, ESPECIALLY AT IN THE INITIAL STAGES OF THIS REORGANIZATION PROCEEDING**

In order to prevail, the Levines must establish that cause exists for lifting the automatic stay. (11 U.S.C. § 362(d)). The Levines urge that the Court should permit them to continue the State Court Litigation, despite the fact that the matter is not ready for trial. Indeed, not a single deposition has been taken, and no trial date has been set.

As is detailed above, the Motion for Relief From Stay is premature, as this Chapter 11

proceeding is in its initial stages, and Debtor has formulated a viable plan for reorganization. Further, in the event that the State Court Action proceeds as to either Debtor or Haas individually, Debtors efforts at reorganization will be significantly hampered. In particular, if forced to defend the State Court Action, Debtor's sole employee will be forced to divert efforts which would otherwise be utilized to confirm a successful plan of reorganization and continue ongoing operations.

### A. Selection of a Forum for Resolution of the Parties Dispute is Premature

Despite the fact that this case is barely one month old, the Levines seek immediate relief from stay to pursue the State Court Action in Superior Court. However, the selection of the various alternative means for resolving the disputed claim, and the forum in which to do so, is currently premature. At the present time the parties are seeking to reach a global resolution of their disputes, which if accomplished would obviate the need to return to state court.

Further, Debtor is working to formulate a feasible plan of reorganization. To that end Debtor is seeking appointment of special counsel to collect an account receivable of $600,000, which would generate a substantial fund from which allowed claims could be paid. In order to provide the protection designed by the Bankruptcy Code, Debtor should be permitted to work towards reorganization without being forced to either defend the State Court Action, or be threatened with a pending Motion for Relief From Stay.

In the event that the parties are not able to reach an agreeable settlement, Debtor does not foreclose the possibility that the parties will be forced to litigate the matter, and if that time comes than perhaps the appropriate forum will be the Superior Court. However, such a determination need not be made at this time.

### B. The Levines Admit That Their Suit Seeks More Than Mere Liquidation of a Claim, but Rather They Are Attempting to Entirely Eliminate Debtor's Existence By Seeking Revocation of Licenses Which Are Necessary for Successful Reorganization

The Levines' brief initially represents that the Levines are seeking relief from stay solely to "prosecute the action to final judgment," and that in the event that they prevail, the Levines will

collect only sums paid by insurance, with the balance of any recovery being administered by the estate. (Motion 1:2-11).

However, the Levines later admit in the body of the brief that they are not seeking simple liquidation of a claim, but rather seek to terminate Debtor's existence by attempting to revoke licenses which are crucial to reorganization. (Motion 11:19-12:8). Thus, the Levines are not seeking solely to liquidate their claim, but rather seek to put Debtor out of business. This drastic and vindictive action taken by the Levines has a dramatic impact on the Chapter 11 proceeding. Thus, if relief from stay is granted, the Levines will be permitted to undermine the bankruptcy reorganization process and eliminate the potential benefits to Debtor and its creditors that Congress intended to provide Chapter 11 Debtors.

Further, the vindictive nature of seeking revocation of Debtor's licenses shows the very need for imposition of the stay in this case. It appears that the animosity of the parties to the State Court Action has clouded the substantive issues, and therefore the breathing room provided by the stay is particularly appropriate here.

**C.    The Levines' Analysis Does Not Establish Cause for Lifting the Stay**

The Levines urge that certain factors weigh in favor of granting relief from stay. Initially, the Levines argue that the availability of insurance warrants granting of the motion because no financial pressure will be placed upon Debtor. This argument fails for multiple reasons.

First, while Debtor's insurance carrier is currently providing a defense, the carrier is asserting a reservation of right, and therefore has not "assumed full financial responsibility for defending the litigation." (*In re Curtis* (Bankr. Ct. Utah 1984) 40 B.R. 795, 800). While Debtor asserts that there will be no liability, and that any liability will be covered by insurance, there has not been a final determination of such issues. Second, the availability of insurance does not account for the severe distraction and time to Debtor's sole employee that will be required in defending the lawsuit. While insurance may be currently covering the cost of defense, the participation of Debtor will still be required. Finally, by filing the action against Haas in his individual capacity, the Levines are seeking

to exert financial pressure against Debtor's sole officer and employee, thereby immediately affecting Debtor.

The Levines then argue three factors, all of which involve the same issue, namely that judicial economy may favor granting relief, that the State Court Action involves state law, and that the Levines would waste resources defending in two forums.

As is indicated above, these arguments fail because (a) litigation may become unnecessary if the settlement discussions are productive; and (b) the eventual resolution of the issues in state court is not foreclosed, but at this time is premature. The purpose of the reorganization process is promoted by devoting time towards reorganization, and potential settlement, not further litigation. If settlement is not achieved, Debtor should be allowed the time to generate a fund from which to pay allowed claims, and resolve any disputed claims at a future time.[2]

The Levines further urge that they will prevail on the merits, and that immediate return to state court is necessary because the dispute involves state law and that the action has "advanced substantively" because the Levines "commenced" discovery. The merits of the contentious underlying lawsuit cannot be analyzed in this brief. However, discovery is in its initial stages, and the matter has not yet been set for trial. The "commencement" of discovery cannot be deemed "substantive" progress, especially when no depositions have yet been taken. While case law exists authorizing the completion of litigation that is set to imminently set to proceed to trial, this is not such a case. Indeed, no trial date has even been set in the State Court Action.

Contrary to the Levines' assertion, there exist threshold bankruptcy issues which must be addressed. In particular, the Court is entertaining Debtor's Motion pursuant to 11 U.S.C. § 105 seeking to stay the State Court Action as to Haas, individually. Necessarily involved in that proceeding is a finding as to the likelihood of confirmation of a plan of reorganization, a finding which should also bear on this Motion.

---

[2] Further, as mentioned above, the Levines are utilizing the same firm in both the State Court Action and the bankruptcy case, so there exists minimal overlap in work.

Finally, with respect to balance of harm, Debtor submits that it will suffer significant harm if the Motion is granted. If relief is granted, Debtor's sole employee will be forced to defend the State Court Action individually, and on behalf of Debtor, to the detriment of the reorganization process. Further, the Levines are seeking to force Debtor out of business by requesting that the Superior Court revoke the licenses necessary for Debtor to continue its operations. Thus, the harm to Debtor would be catastrophic.

To the contrary, the Levines suffer virtually no prejudice if relief is denied. Debtor is diligently working on a plan of reorganization, and even in the early stages of this case has viable options for a plan of reorganization. Further, the Levines admit that their claim is fully covered by insurance with a policy limit between $1,000,000 and $2,000,000, with their highest demand being $750,000. Thus there is no risk of non-payment in the event that the Levines eventually prevail on any claim, and therefore Debtor should be provided the opportunity to reorganize.

### D. Other Factors Weigh in Favor of Denial of the Motion

The granting of relief from stay is not proper when the claimant is seeking to obtain leverage or bargaining position, as such conduct is contrary to the spirit of reorganization. "Given the policies favoring reorganization of debtors, the bankruptcy court's efforts to preserve a level playing field for all parties to negotiate a plan was a rational basis for denying relief from the automatic stay." (*In re Conejo Enterprises* (9th Cir. 1995) 96 F.3d 346, 353 (holding that denial of motion for relief from stay was proper to prevent one creditor from obtaining leverage that may affect negotiation of a successful plan of reorganization)).

In this case granting relief from stay will have a dampering effect on efforts to work towards a mutually beneficial plan of reorganization. This is especially pertinent in small business Chapter 11 proceedings, as "the automatic stay is fundamental to the reorganization process, and its scope is intended to be broad...A primary purpose of the automatic stay provision is to afford debtors in Chapter 11 reorganizations an opportunity to continue their businesses with their available assets." (*SBA v. Rinehart* (8th Cir. 1989) 887 F2d 165, 168).

Further, the *Curtis* case raises other factors not addressed by the Levines which warrant denial of the Motion. First, if relief is granted, only partial resolution will be accomplished. (*In re Curtis* (Bankr. Ct. Utah 1984) 40 B.R. 795, 799). The liquidation of the Levines' claim, if any, at this early time will not fully resolve the issues, as confirmation proceedings will still be required.

More importantly, the Levines fail to address the inquiry as to whether the relief will cause "interference with the bankruptcy case." (*Id*. at 800). As is discussed in depth above, and in the accompanying injunctive relief proceeding, the reorganization proceedings will be severely hampered if Debtor's breathing space is revoked, and its sole employee left to defend the State Court Action in two capacities, while also attempting to pursue successful reorganization.

Finally, while the Levines argue that their commencement of discovery constitutes sufficient progress, the correct analysis is "whether the foreign proceedings have progressed to the point where the parties are prepared for trial." (*Id*.) In this case, the parties have conducted no depositions, and no trial date has even been set. Thus, the case is certainly not prepared for trial.

## VI. CONCLUSION

Based upon the totality of the circumstances analyzed above, Debtor prays that the Motion be denied.

Respectfully submitted.

Dated: January 13, 2008         By:   /s/   Lawrence A. Jacobson
                                      Lawrence A. Jacobson
                                      Attorneys for Debtor

POINTS AND AUTHORITIES                                                          13

Case: 07-54072    Doc# 35    Filed: 01/14/08    Entered: 01/14/08 16:47:37    Page 13 of 13